Case 4:23-cv-03745   Document 58   Filed on 12/31/24 in TXSD   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
December 31, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| KIMBERLY CUTCHALL AND MICHAEL CUTCHALL, | § § § § | |
| Plaintiffs, | § | CIVIL ACTION NO. 23-3745 |
| v. | § § | |
| CHUBB LLOYD'S INSURANCE COMPANY OF TEXAS, | § § § § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

The owners of a private residence claimed damage to their home allegedly caused by a hailstorm. The plaintiffs, Kimberly and Michael Cutchall, sued their homeowner's insurance provider, Chubb Lloyd's Insurance Company of Texas. Chubb disputes that there was water damage caused by a storm and claims that it already issued payment to the Cutchalls for all of the covered losses. Five motions are pending before the court: Chubb's motion for summary judgment, (Docket Entry No. 25); Chubb's motion to exclude the Cutchalls' experts, (Docket Entry No. 26); the Cutchalls' motion to amend the scheduling order, (Docket Entry No. 37); the Cutchalls' motion to strike Chubb's expert report, (Docket Entry No. 52); and Chubb's motion to sever (Docket Entry No. 57).[1] The motion to amend is denied, and the motion for summary judgment is granted. The remaining motions are dismissed as moot. The reasons for these rulings are explained below.

---

[1] Although not yet ripe, the motion to sever is moot, so the court dismisses it with the other moot motions.

I.  **Background**

   A.  **The Insurance Claim**

This dispute concerns an insurance policy, number 15054346-01, issued by Chubb to the Cutchalls, providing coverage for certain type of damages to their home occurring between May 29, 2021, and May 29, 2022. (Docket Entry No. 25-2 at 4). The policy insures against "risks of physical loss to the property," subject to several exceptions. (*Id.* at 28). The exceptions include loss caused by "wear and tear, deterioration," "any quality in property that causes it to damage or destroy itself," "dampness of atmosphere," or "rats, mice, termites, moths or other insects." (*Id.* at 29). According to Mrs. Cutchall's affidavit, their home has been "insured in annually renewing insurance policies with CHUBB since 2003 with no lapse in coverage." (Docket Entry No. 35-2 at 1).[2] During that period, Chubb inspected the Cutchalls' home multiple times, including on June 15, 2020. *See* (Docket Entry No. 35-3). The report from that inspection did not note any damage to the roof. *See generally* (*id.*).

In September 2021, the Cutchalls submitted an insurance claim to Chubb for water damage to their house. (Docket Entry No. 25-3 at 5). Mrs. Cutchall spoke with Chubb's adjuster on the same day. (Docket Entry No. 35-2 at 2). A few weeks later, Chubb sent two representatives from Nelson Forensics, LLC, including an engineer named Matthew Oestrike, to inspect the Cutchalls' house. (Docket Entry No. 25-5 at 4). The report from Nelson Forensics concluded that the moisture in the house was due to deterioration or deficiencies in the way the house was built, not storm damage. (*Id.* at 22–24). Mrs. Cutchall asserts that an employee of Nelson Forensics made comments to her during the inspection that conflicted with his report, including that the readings

---

[2] The Cutchalls sued only under the policy covering damage occurring between May 29, 2021, and May 29, 2022. (Docket Entry No. 1-3 at 3).

2

on his thermal camera showed "water damage you don't even see yet." (Docket Entry No. 35-2 at 3).

The Cutchalls hired Nick Halliday, a public adjuster with Copperhead Claims, to assist with their claim. (Docket Entry No. 35-2 at 3–4); (Docket Entry No. 35-6). On March 2, 2022, Mr. Halliday and representatives from Chubb, along with Mrs. Cutchall, inspected the Cutchalls' house. (Docket Entry No. 25-8 at 2); (Docket Entry No. 35-2 at 3–4). According to Mrs. Cutchall, Chubb's inspectors stated during the inspection that there was water damage to the house caused by storm, wind, and hail. (Docket Entry No. 35-2 at 4). Mr. Halliday later produced a report attributing the water damage he observed on the Cutchalls' house to wind and hail damage. (Docket Entry No. 35-6–35-9). The report included a link to a news story with the note: "Heavy wind and hail storm reported in Houston by channel 11KHOU on 05/18/2021." (Docket Entry No. 35-7 at 3).

Chubb's representatives, including Mr. Oestrike from Nelson Forensics, returned for another site visit on April 14, 2022. (Docket Entry No. 35-2 at 4). Mrs. Cutchall and Mr. Halliday again joined, and they "recorded the conversations during the . . . site inspection." (*Id.*). According to Mrs. Cutchall's affidavit,[3] she asked one of the inspectors why the "water damage you don't even see yet" was not included in the first report, and Mr. Oestrike replied: "Well, that was the only thing we didn't include in the report." (*Id.*).

Nelson Forensics prepared a supplemental report documenting the subsequent inspections. (Docket Entry Nos. 25-8–25-12). The report stated that the roof damage was "<u>unrelated</u> to wind or hail from any storm event," and that "the limited roof tile distress at the subject structure is due

---

[3] No recordings were produced to this court.

3

to as-built conditions, deferred maintenance, thermal and moisture variations in the roofing, improper shipping and handling, and/or mechanical impact/loading (i.e., foot traffic)." (Docket Entry No. 25-9 at 4) (bolding removed). The inspectors noted some indications of hail damage on the gutters and air conditioning unit, damage that they concluded was caused by hail impact occurring "most likely prior to 2020." (*Id.* at 3). This conclusion was based on Nelson Forensics's assessment of weather data from two sources, along with the observation that there was "no evidence of wind distress" at the property. (*Id.*); (Docket Entry No. 25-8 at 8).

During the six months after the Cutchalls filed their claim, they worked with six different adjusters from Chubb. (Docket Entry No. 35-2). In total, they worked with eight adjusters from Chubb. (*Id.*). The Cutchalls hired DryMore Company, a water damage and remediation company, to investigate water damage in their home. (Docket Entry No. 35-5).[4] The Cutchalls also hired a mold remediation company and a roofer to assess and fix the damage to their home. (Docket Entry No. 35-2 at 2).

In June 2022, Chubb sent a letter to the Cutchalls explaining the results of its investigation, including that the damage to the Cutchalls' house was "a result of several different causes of loss including a hail event prior to 2020, roof distress unrelated to wind or hail, as built defects, changes in temperatures between the interior and the attic space, prior plumbing leaks, and localized movement." (Docket Entry No. 25-13 at 2–3). Chubb issued a $27,385.81 payment to the Cutchalls for covered damages. (*Id.* at 4). The Cutchalls never cashed the check. (Docket Entry No. 25-6 at 6).

---

[4] DryMore's report identified "Cat 3" water damage and noted that the "drywall in this home has been damaged by water that has been contaminated by fecal matter." *See, e.g.*, (Docket Entry No. 35-5 at 3). Mr. Halliday also reported that water leaking in the Cutchalls' home was "contaminated with fecal matter." *See, e.g.*, (Docket Entry No. 35-7 at 25). The Cutchalls have now apparently abandoned any theory of liability premised on rodent feces and contaminated water. *See* (Docket Entry No. 35 at 8).

B.     The Litigation

The Cutchalls sued Chubb for breach of contract, violations of the Texas Insurance Code, breach of the duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices Act. (Docket Entry No. 1-3). Chubb designated Mr. Oestrike and Mark Kubena, an engineer with Insight Engineering, as experts, among others. (Docket Entry No. 15). Mr. Kubena inspected the Cutchalls' home in January 2023. (Docket Entry No. 25-17 at 1). His report stated that he did not "observe any hail or wind created openings or repairs" in the Cutchalls' roof "indicative of weather caused damage." (*Id.* at 7). Mr. Kubena's report also stated that, according to his research, "there were no severe hail events at the property address in 2019, 2020, 2021, or the Spring of 2022." (*Id.*).

Along with Mr. Halliday, the Cutchalls designated another independent adjuster, Brandon Allen, as an expert. (Docket Entry No. 14). The date of loss listed in Mr. Allen's report is September 7, 2021. (Docket Entry No. 14-1 at 2). On the morning of Mr. Allen's deposition, the Cutchalls' counsel produced a new report from Mr. Allen listing the date of loss as April 29, 2023. (Docket Entry No. 25-22 at 1, 7). Shortly after the deposition started, a third version of Mr. Allen's report listing the date of loss as August 16, 2021, was circulated between counsel. (Docket Entry No. 25-26 at 1, 7). Mr. Allen testified during his deposition that he was "confident" that the date of loss was August 16, 2021. (Docket Entry No. 25-25 at 10). At the deposition, Mr. Allen also limited his opinions to the damage to the Cutchalls roof and did not give any opinions about alleged moisture penetration into the house from the roof. (*Id.* at 7).

Chubb retained a meteorologist, David Finfrock, to assess whether a hailstorm could have damaged the Cutchalls' home on August 16, 2021, as Mr. Allen contended. After analyzing the data relied upon by Mr. Allen, along with multiple other sources of weather data, Mr. Finfrock

5

concluded that "there is no evidence of hail at [the Cutchalls' address] on 16 August 2021." (Docket Entry No. 25-30 at 12).

Nearly a year after this case was removed, Chubb filed a motion for summary judgment on all of the Cutchalls' claims. (Docket Entry No. 25). At that point, Chubb had deposed the Cutchalls, Mr. Halliday, and Mr. Allen; the Cutchalls had not taken or requested any depositions. (Docket Entry No. 25 at 8). Chubb simultaneously filed a motion to exclude the Cutchalls' experts. (Docket Entry No. 26).

The Cutchalls, represented by new counsel, responded by asking for a continuance and for permission to designate new experts despite the fact that the deadline to designate experts had expired and despite the fact that Chubb had already deposed their experts. (Docket Entry No. 27). The court rejected the Cutchalls' request for a do-over. (Docket Entry No. 28). On reconsideration, the court again denied the Cutchalls' request. (Docket Entry No. 34). The court allowed the Cutchalls to "take the deposition of the field investigator who first inspected the property, whom the Cutchalls' counsel identified [at a hearing on September 27, 2024] as critical to their response to Chubb's motion for summary judgment," before filing their response. (*Id.* at 4). The Cutchalls declined an opportunity to take this allegedly critical deposition before their response was due. (Docket Entry No. 38-1 at 2).

The Cutchalls have responded to the motion for summary judgment, (Docket Entry No. 35), and the motion to exclude their experts, (Docket Entry No. 36). They also filed a motion to amend the scheduling order, (Docket Entry No. 37), and a motion to exclude one of Chubb's expert's reports, (Docket Entry No. 52). Chubb responded to both of those motions. (Docket Entry Nos. 38, 53).

**II.     The Motion to Amend the Scheduling Order**

The Cutchalls have moved to amend the scheduling order to designate "a new causation and damages expert and an attorney's fees expert." (Docket Entry No. 37). The parties have "agree[d] to submit attorney's fees issues to the court by affidavit after liability and damages are resolved." (Docket Entry No. 11). Because submitting the fee issue to the court reduces, if not eliminates, the need for an attorney's fee expert, the Cutchalls' request is denied as to the attorney's fees expert.

A Rule 16 scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). Good cause requires a showing that "the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting reference omitted). This court has "broad discretion to preserve the integrity and purpose of the pretrial order." *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (quoting reference omitted); *see also Campbell v. Keystone Aerial Survs., Inc.*, 138 F.3d 996, 1000 (5th Cir. 1998) ("[D]istrict courts have 'wide latitude' in pretrial matters and must be allowed to act with 'intelligent flexibility' in this arena.") (quoting reference omitted).

When considering whether to allow late-designated expert witness testimony, district courts consider four factors: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004); *see also Ricks v. Friends of Wwoz, Inc.*, No. CV 18-9767, 2019 WL 13242029, at *1 (E.D. La. July 15, 2019) (applying these factors when assessing good cause to amend a Rule 16 scheduling order); *Salas v. Transwood Logistics, Inc.*, No. 6:19-CV-

101, 2021 WL 4483511, at *4 (S.D. Tex. July 7, 2021), *report and recommendation adopted,* No. 6:19-CV-00101, 2021 WL 4480746 (S.D. Tex. Sept. 30, 2021).

The court finds that good cause does not exist for further delay. First and foremost, the Cutchalls have not exhibited reasonable diligence. They did not request any depositions until nearly a year after this case was removed. A change in counsel does not excuse the Cutchalls' lack of diligence. *See, e.g.*, *Choice Hotels Int'l, Inc. v. Goldmark Hosp., LLC*, No. 3:12-CV-0548-D, 2014 WL 80722, at *3 (N.D. Tex. Jan. 9, 2014) ("[A]bsent special circumstances . . . [a party] cannot rely on a change of its own counsel to delay th[e] litigation"); *Nguyen v. Versacom, LLC*, No. 3:13-CV-4689-D, 2016 WL 7426126, at *3 (N.D. Tex. Dec. 23, 2016) (noting that a change of counsel does not entitle a party "to attempt to undo the strategic choices made by their prior counsel"). Even the Cutchalls' new counsel gave up an opportunity to depose an allegedly critical witness before responding to Chubb's summary judgment motion. The Cutchalls' failure to exhibit reasonable diligence is reason alone to deny their motion to amend. *See S&W Enters., L.L.C.*, 315 F.3d at 535.

There are other reasons to deny the motion as well. The Cutchalls have repeatedly asserted that they "developed a conflict of interest" with their expert but—in the myriad of briefing on this issue—provide no explanation of what the alleged conflict was or when it arose. *See, e.g.*, (Docket Entry No. 37 at 4) (stating that "[t]he reason why" Mr. Allen is "unavailable is due to a clear, documented and demonstrated professional conflict," but providing no further information). Regardless, the Cutchalls' public adjuster and other expert, Mr. Halliday, inspected the property multiple times and has issued conclusions and opinions that make the Cutchalls' "replacement expert" redundant. *See* (Docket Entry No. 36-3) (Mr. Halliday's affidavit); *see also* (Docket Entry No. 38 at 6–7) (detailing redundancies). As the court detailed in its order denying the motion to

8

reconsider, (Docket Entry No. 34), the Cutchalls' request would require significant added work and expense on the part of Chubb, despite Chubb's diligence in litigating this case. A continuance would not cure that prejudice. All four good-cause factors weigh against granting an extension.

The Cutchalls have dragged this case out long enough. They have had more than enough time and opportunity to gather evidence for summary judgment, and they have failed to exercise reasonable diligence justifying an extension of the deadlines. *See S&W Enters., L.L.C*, 315 F.3d at 535. The motion to amend, (Docket Entry No. 37), is denied.

### III.   The Summary Judgment Motion

#### A.   The Timing of the Summary Judgment Motion

This court can consider a motion for summary judgment filed "at any time until 30 days after the close of all discovery." FED. R. CIV. P. 56(b). "A trial court cannot rule on a summary judgment motion where adequate discovery has been denied a party." *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005). But the Fifth Circuit "has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990).

As detailed previously, the Cutchalls did not exhibit any sense of urgency in this case until recently. Chubb filed its motion for summary judgment nearly a year after removing the case, during which time the Cutchalls had not requested any depositions. When the Cutchalls filed their response to Chubb's motion for summary judgment, the expert deadlines had passed months before, and there were 18 days left in the discovery period. (Docket Entry Nos. 11, 35). The court finds that the Cutchalls have had ample opportunity to engage in discovery, and they have not been

9

denied discovery that they needed. The court has denied the Cutchalls' request to redo their expert designations, and additional discovery is not likely to produce facts that would change the court's ruling. The issues raised in Chubb's motion for summary judgment are resolvable on the current record.

### B. The Legal Standard for Summary Judgment

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it 'might affect the outcome of the suit.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019), *as revised* (Jan. 25, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). When considering a motion for summary judgment, the court "must consider all facts and evidence in the light most favorable to the nonmoving party" and "must draw all reasonable inferences in favor of the nonmoving party." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and pointing to record evidence demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c). "When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial.'" *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration

adopted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

"Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quotation marks and quoting reference omitted). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quotation marks and quoting reference omitted). Rather, the nonmovant "must identify specific evidence in the record and articulate the precise manner in which the evidence supports [its] claim." *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (alteration adopted) (quotation marks and quoting reference omitted).

The movant is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. But "[i]f 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson*, 477 U.S. at 250–51).

### C. The Breach of Contract Claim

The Cutchalls' breach of contract claim fails for two reasons: first, the Cutchalls have failed to point to evidence raising a dispute about whether their claim was covered; and second, the Cutchalls have failed to distinguish between covered and uncovered damages.

11

### 1. Failure to Identify Covered Loss

Under Texas law, "[t]he insured bears the burden of establishing that its claim is covered by the policy." *Certain Underwriters at Lloyd's of London v. Lowen Valley View*, L.L.C., 892 F.3d 167, 170 (5th Cir. 2018). "Unconfirmed rumors of loss are insufficient to satisfy that burden." *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1200 (5th Cir. 1993) (affirming summary judgment for insurance company when the plaintiff's "evidence establishe[d] only that [the plaintiff] d[id] not know when its losses occurred" and did not preclude the possibility that the damage occurred outside of the policy period); *see also 343 W. Sunset, LLC v. Seneca Ins. Co., Inc.*, No. 5-19-CV-01375-FB-RBF, 2021 WL 5227086, at *3 (W.D. Tex. July 27, 2021), *report and recommendation adopted*, No. SA-19-CV-1375-FB, 2021 WL 5195799 (W.D. Tex. Aug. 11, 2021).

According to two of Chubb's experts, there were no hail or wind storms at the Cutchalls' address during the policy period that could have caused the damage they claimed to their house. (Docket Entry No. 25-8 at 8); (Docket Entry No. 25-9 at 3–4); (Docket Entry No. 25-17 at 7). Mr. Oestrike based his opinion on: (1) weather data from the National Oceanic and Atmospheric Administration; (2) weather data from CoreLogic Weather Verification Services, a third-party forensic weather service; and (3) the lack of "evidence of wind distress, such as displaced exterior trim or damaged perimeter wood fencing." (Docket Entry No. 25-8 at 7–8); (Docket Entry No. 25-9 at 3–4). The weather data relied on by Mr. Oestrike was for "the vicinity of" the Cutchalls' house. (Docket Entry No. 25-8 at 7). Mr. Kubena based his opinion on hail and wind reports produced by CoreLogic and Verisk, a company that analyzes data from the National Weather Service, as well as his own observations of the Cutchalls' house. (Docket Entry No. 25-17 at 3,

7–8); *see also* (Docket Entry No. 15-8 at 53–62). The weather data relied on by Mr. Kubena was specific to the Cutchalls' address. *See* (Docket Entry No. 15-8 at 53–62).

The Cutchalls assert that a hailstorm damaged their house on a specific date, but their evidence does not raise a genuine dispute about whether a storm capable of causing the alleged damage affected their neighborhood on that date or at another time during the policy period. As a preliminary matter, the Cutchalls' evidence contradicts itself as to when the alleged storm occurred. Mrs. Cutchall testified that it was "March o[r] April of 2021," (Docket Entry No. 25-6 at 3–4)—which was before the policy period started in May 2021. Mr. Cutchall testified that he could not identify the date of the storm allegedly causing damage to his house. (Docket Entry No. 25-3 at 3). Even Mr. Allen and Mr. Halliday disagree about the date of the storm—not to mention that Mr. Allen gave three different dates, one of which was outside of the policy period, and eventually settled on a date that was discredited by Chubb's meteorologist.

Evidence from Mr. Allen—portrayed in the light most favorable to the Cutchalls—indicates that the date of loss was August 16, 2021. (Docket Entry No. 25-26 at 7). Mr. Allen testified that he was "confident" that the alleged storm occurred on that date. (Docket Entry No. 25-25 at 10). But he also testified that, between him and a professional meteorologist opining about whether a hailstorm hit at a particular date and time, the "Meteorologist is the expert." (Docket Entry No. 25-25 at 9–10). A meteorologist examined the same data used by Mr. Allen and determined that it did not support Mr. Allen's conclusion. (Docket Entry No. 25-30 at 2–5). Other sources examined by the same meteorologist showed no evidence of hail at the Cutchalls' address on August 16, 2021. (*Id.* at 12).

Under other circumstances, the disagreement between two experts can be sufficient to preclude summary judgment. *See, e.g.*, *PJ Day, LLC v. State Auto. Mut.*, 377 F. Supp. 3d 646, 651

13

(N.D. Tex. 2019). Here, it is not. Mr. Allen qualified his opinion by saying a meteorologist would be more trustworthy on this topic. Then, a meteorologist not only explained how Mr. Allen misinterpreted the data, but also analyzed data from three other sources that contradicted Mr. Allen's conclusion. The Cutchalls' other expert, Mr. Halliday, suggested that the alleged storm occurred on May 18, 2021, but he based his opinion on a news article that did not have any information particular to the Cutchalls' neighborhood. (Docket Entry No. 7 at 6). That is insufficient to raise a factual dispute in light of the multiple sources of neighborhood-specific evidence relied on by Chubb's experts. The conflict between Mr. Halliday's and Mr. Allen's dates is further evidence that the Cutchalls have failed to raise a genuine dispute about whether a hailstorm occurring during the policy period caused the damage at issue.

No reasonable juror could believe the Cutchalls' evidence—or, really, lack thereof—over Chubb's. Because no genuine dispute exists over whether a covered loss occurred during the policy period, summary judgment on the Cutchalls' breach of contract claim is required. *See Thomas*, 913 F.3d at 462.

### 2. Failure to Segregate Damages

The Cutchalls' breach of contract claim fails for another reason: their own evidence identifies uncovered water damage in the Cutchalls' house, but the Cutchalls have not provided any means for segregating the uncovered from the covered damage. "[W]hen covered and excluded perils combine to cause an injury, the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage." *Lowen Valley View*, 892 F.3d at 170 (quoting *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993)). "If the insured falls short of meeting this burden, the insurer is entitled to summary judgment." *Id.*

The Cutchalls hired a roofer to assess the damage and implement "immediate repairs to what they could see without getting on the roof to prevent the leaking from progressing and compounding the water damage." (Docket Entry No. 35-2 at 2). The invoice provided the following description of the roof repair:

> "Provide and install nine (9) new O'Hagan vents and paint closely to match roof tile color. This is to correct the inadequate ventilation of the attic currently, which is causing moisture to build up in the walls between the attic space and conditioned space of the home. The moisture build up is causing water damage, as well as mold and mildew on the interior walls and ceilings."

(Docket Entry No. 25-14). Similarly, the mold remediation company hired by the Cutchalls identified potential problems with their HVAC system that could "cause excess condensation within the system and potentially result in microbial growth" like that observed on the HVAC supply components in the Cutchalls' house. (Docket Entry No. 25-15 at 4–5). Both of these assessments, provided by experts hired by the Cutchalls, identify causes of the water damage in the Cutchalls' house that are not covered by their policy with Chubb. *See* (Docket Entry No. 25-2 at 29) (the policy does not cover loss caused by "wear and tear, deterioration or loss caused by any quality in property that causes it to damage or destroy itself" or by "dampness of atmosphere").

Chubb's investigation identified covered damages warranting a payment to the Cutchalls in the amount of more than $27,000. Like the roofer and mold remediation company hired by the Cutchalls, Chubb's experts also identified evidence of noncovered damages. *See, e.g.*, (Docket Entry No. 25-17 at 8) (identifying ventilation issues and lack of sealant on lights as causes of water damage). In the face of this evidence, the Cutchalls have not "present[ed] [any] evidence affording the jury a reasonable basis on which to allocate the damage." *Lowen Valley View*, 892 F.3d at 170 (quoting *Lyons*, 866 S.W.2d at 601).

15

The Cutchalls first respond that this argument fails because Chubb did not plead it as an affirmative defense. (Docket Entry No. 35 at 7). But "the doctrine of concurrent causation is not an affirmative defense or an avoidance issue." *Wallis v. United Services Auto. Ass'n*, 2 S.W.3d 300, 303 (Tex. App.—San Antonio 1999, pet. denied). "Rather, it is a rule which embodies the basic principle that insureds are entitled to recover only that which is covered under their policy." *Id.* As detailed previously, the Cutchalls "bear[] the burden of establishing that [their] claim is covered by the policy." *See Lowen Valley View*, 892 F.3d at 170. "Because [the Cutchalls] can recover only for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the [Cutchalls] carr[y] the burden of proof." *See Wallis*, 2 S.W.3d at 303. If the Cutchalls cannot raise a genuine dispute as to how to segregate uncovered and covered damages, summary judgment for Chubb on the breach of contract claim is required.

Second, the Cutchalls argue that their failure to segregate damages is excused because Chubb has not "cited to the place in the CHUBB policy[] where 'concurrent covered and noncovered causes of actions' must be segregated." (Docket Entry No. 35 at 7). The Cutchalls misunderstand the law. An insured's burden to segregate damages attributable solely to the covered event is not a product of the contract, but rather an element of the Cutchalls' breach-of-contract claim for which they bear the burden of proof. *See Wallis*, 2 S.W.3d at 303; *see also Employers Casualty Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988), *overruled in part on other grounds*, 925 S.W.2d 696 (Tex. 1996).

Lastly, the Cutchalls assert that "this is a covered claim" because Chubb's assessors found water damage resulting from rainwater intrusion. (Docket Entry No. 35 at 22); *see, e.g.*, (Docket Entry No. 25-5 at 22). That misses the point. The evidence suggests that the Cutchalls had water

16

damage in their house. Not all water damage is a covered loss under the Cutchalls' policy with Chubb. This case turns on what damages, if any, were covered by the policy. Because the Cutchalls have provided no reasonable basis for distinguishing between the two, their breach of contract claim fails on summary judgment. *See Lowen Valley View*, 892 F.3d at 170; *see also 343 West Sunset LLC*, 2021 WL 5227086 at *4 (dismissing claims when unrebutted evidence showed some of the claimed damage was caused by events excluded from coverage, but the insured "made no effort to allocate between the covered and uncovered damage").

### D.     The Extra-Contractual Claims

In addition to breach of contract, the Cutchalls assert claims for breach of the duty of good faith and fair dealing; violations of the Texas Insurance Code provisions related to unfair settlement practices, *see* TEX. INS. CODE §§ 541.060(a); violations of the Texas Insurance Code provisions related to the prompt payment of claims, *see* TEX. INS. CODE §§ 542.060, 542.058; and violations of the Texas Deceptive Trade Practices Act. (Docket Entry No. 1-3 at 10–13). In the absence of a breach of contract claim, none of these extra-contractual causes of action survive.

"[A]n insurer breaches its duty of good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998). "[C]ommon-law bad-faith claims are . . . negated by the determination in the breach of contract claim that there was no coverage." *Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005). But "an insurer's denial of a claim it was not obliged to pay might nevertheless be in bad faith if its conduct was extreme and produced damages unrelated to and independent of the policy claim." *Id.* Moreover, "an insurer cannot insulate itself from bad faith liability by investigating a claim in a manner calculated to construct a pretextual basis for denial." *Simmons*, 963 S.W.2d at 44.

Chubb investigated the Cutchalls' claim and concluded that the covered losses, minus the deductible, amounted to $27,385.81. Chubb issued a payment in that amount; the Cutchalls never cashed the check. As detailed previously, the Cutchalls have failed to raise a genuine dispute of material fact as to whether they suffered additional losses covered by the policy.

The Cutchalls argue that Chubb's investigators "deliberately avoided including in their report clear, covered damages that were even pointed out to them by the Plaintiffs and Nick Halliday," which they say shows that the investigation was a pretext for denial. (Docket Entry No. 35 at 28). Chubb retained a bad-faith expert, Robert Valdez, who reviewed testimony, reports, and other evidence and concluded that the claim was properly handled. (Docket Entry No. 25-34). In response, the Cutchalls falsely claim that Mr. Valdez failed to consider key evidence. *Compare, e.g.*, (Docket Entry No. 35 at 29) ("Mr. Valdez never reviewed any testimony.") *with* (Docket Entry No. 25-34 at 18) (Mr. Valdez's report stating that he reviewed deposition transcripts from both plaintiffs and Mr. Halliday).[5] The Cutchalls did not seek to depose Mr. Valdez, nor did they timely designate their own bad-faith expert. In short, their procedural critiques of Mr. Valdez's report are easily debunked, and they offer no substantive evidence contradicting Mr. Valdez's conclusions.

Beyond the $27,385.81 payment for covered losses, Chubb's liability for the water damage in the Cutchalls' home was, at least, not reasonably clear. The record evidence presents no more than "a bona fide coverage dispute," which "does not demonstrate bad faith." *See Simmons*, 963 S.W.2d at 44.

---

[5] Mr. Allen's deposition occurred after Mr. Valdez's report was published.

The Cutchalls' failure to raise a fact issue regarding their breach of contract and bad faith claims is fatal to their claims under the Texas Insurance Code and the Texas Deceptive Trade Practices Act. *See USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490 (Tex. 2018) ("The general rule is that an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy."); *Boyd*, 177 S.W.3d at 922 (no liability for prompt payment of claims under Texas Insurance Code if insurance claim is not covered by the policy); *Douglas v. State Farm Lloyds*, 37 F.Supp.2d 532, 544 (S. D. Tex. 1999) ("[W]hen an insured joins claims under the Texas Insurance Code and the DTPA with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either of the statutory claims."); *Spicewood Summit Off. Condominiums Ass'n, Inc. v. Am. First Lloyd's Ins. Co.*, 287 S.W.3d 461, 468 (Tex. App.—Austin 2009, pet. denied) ("Absent legally sufficient evidence of bad faith, however, Spicewood's claims under the common law, insurance code chapter 541, and the DTPA are subject to summary judgment."); *see also 343 West Sunset, LLC*, 2021 WL 5227086, at *4.

### IV.   Conclusion

The Cutchalls' motion to amend, (Docket Entry No. 37), is denied.  Chubb's motion for summary judgment, (Docket Entry No. 25), is granted, and all of the Cutchalls' claims are dismissed with prejudice.  The remaining pending motions, (Docket Entry Nos. 26, 52, 57), are dismissed as moot.  Final judgment is entered by separate order.

SIGNED on December 31, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge